LUCAS, COMMISSIONER OF INTERNAL REVENUE, *v.* OX FIBRE BRUSH COMPANY.

No. 250. Argued February 28, 1930.—Decided April 14, 1930.

*Assistant Attorney General Youngquist,* with whom *Messrs. J. Louis Monarch* and *Morton Poe Fisher,* Special Assistants to the Attorney General, *Clarence M. Charest,* General Counsel, Bureau of Internal Revenue, and *John MacC. Hudson,* Special Attorney, Bureau of Internal Revenue, were on the brief, for petitioner.

*Mr. Harry B. Sutter,* with whom *Messrs. Albert L. Hopkins, Edward H. McDermott,* and *O. John Rogge* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Ox Fibre Brush Company appealed to the Board of Tax Appeals from the determination by the Commissioner of Internal Revenue of a deficiency in the income tax of the corporation for the year 1920. The Board of Tax Appeals sustained the ruling of the Commissioner (8 B. T. A. 422), and this decision was reversed by the Circuit Court of Appeals. 32 F. (2d) 42.

The question relates to extra compensation granted by the directors of the corporation in the year 1920 to the president and treasurer, of $24,000 each. In the income tax return for that year, the corporation deducted these items from the gross income and the Commissioner of

Internal Revenue disallowed the deduction. The Board of Tax Appeals held that, if the additional compensation was given for services performed in prior years, it was not deductible in the year 1920; and if, as the Board concluded, it was allowed for services rendered in 1920, it was in excess of reasonable compensation for that year and hence could not be deducted.

The Circuit Court of Appeals found that the conclusion of the Board of Tax Appeals that the additional compensation was allowed for services performed in the year 1920 was without evidence to support it; that the compensation was for past services. It was further decided that the amount of the additional payment was reasonable in the circumstances shown and was deductible in the return for 1920, the year in which it was allowed and paid.

From the facts as found by the Circuit Court of Appeals, it appears that the president of the corporation had been in office from 1906 and its treasurer from 1907. Both of these officers had devoted their entire time to the interests of the corporation. Each year they had personally guaranteed bank loans to the corporation of considerable amounts. In addition to their ordinary executive duties, the president and treasurer had charge of all large purchases, of all sales, and had directed the general policies of the corporation. Prior to their administration, the business of the corporation had been in a chaotic state and had been conducted at a loss, but under their management the gross sales had increased from about $374,000 in 1909 to $1,273,000 in 1920. The net results were changed from an operating loss of about $4,000 in 1908 to net earnings (after deduction of salaries, including the amounts here in question) of about $158,000 in 1920. No dividends were paid until 1910, but dividends were increased from $4,500 in 1911 and 1912 to $423,275 in

1920, represented by a fifty per cent. stock dividend of $300,000 and cash dividends aggregating $123,275, or 25.98 per cent. on the outstanding capitalization at the beginning of that year. The net income in 1920, after a deduction of all expenses, including officers' salaries, represented a return of 21.13 per cent. on invested capital of about $750,000, as determined by the Commissioner of Internal Revenue. The corporation had advanced to a leading place in the brush trade. In 1919 and 1920, the president and treasurer had received salaries of $12,000 and $15,000, respectively. In 1918 their combined salaries were approximately $25,000. The record does not disclose what they received in 1915, 1916 and 1917, but in 1914 they together received $16,000; in 1913, $11,000; in the three preceding years, $10,000, and before that time they received $6,000.

On May 6, 1920, the board of directors unanimously voted to pay to each of these officers $24,000, the resolution in each case explicitly stating that it was paid " as extra compensation for his past services to this company as an officer thereof and in any other capacity."

The books of the corporation were kept on an accrual basis, and during May, 1920, proper entry was made crediting the accounts of the president and treasurer with the additional compensation thus voted.

It is unnecessary to review the facts more in detail, as the Government, adopting the view that the additional compensation, as stated in the resolution of the board of directors and as found by the Circuit Court of Appeals, was for services performed in prior years, concedes on behalf of the Commissioner that the payments were reasonable for such services. The sole question, therefore, which the Government presents is whether these payments were properly deductible in the return for the year 1920.

The statute applicable to the return is the Revenue Act of 1918, c. 18, 40 Stat. 1057. Section 234 (a) of that act provides (*id.* p. 1077):

" Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, . . ."

The payments in the present instance were actually made in the year 1920. The expenses represented by these payments were incurred in that year, for it is undisputed that there was no prior agreement or legal obligation to pay the additional compensation. This compensation for past services, it being admitted that it was reasonable in amount in view of the large benefits which the corporation had received as the fruits of these services, the corporation had a right to pay, if it saw fit. There is no suggestion of attempted evasion or abuse. The payments were made as a matter of internal policy having appropriate regard to the advantage of recognition of skill and fidelity as a stimulus to continued effort. There was nothing in the income tax law to preclude such action. On the contrary, the payments fell directly within the provision of section 234(a) as a reasonable allowance for compensation for personal services actually rendered. The statute does not require that the services should be actually rendered during the taxable year, but that the payments therefor shall be proper expenses paid or incurred during the taxable year.

It is urged that under Section 212 (b) of the Revenue Act of 1918 (*id.* 1064, 1065) the Commissioner was entitled to disallow the deduction in the return for 1920,

upon the ground that if it were allowed the return would not clearly reflect the income for that year. It is said that the basic principle to be applied is that the true net income is to be taxed. Section 212 (b) provides:

"(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. . . ."

This section relates to the method of accounting; the Commissioner may make the computation on a basis that does clearly reflect the income, if the method employed by the taxpayer does not. But this section does not justify the Commissioner in allocating to previous years a reasonable allowance as compensation for services actually rendered, when the compensation was properly paid during the taxable year and the obligation to pay was incurred during that year and not previously. In the present instance, the expense could not be attributed to earlier years, for it was neither paid nor incurred in those years. There was no earlier accrual of liability. It was deductible in the year 1920 or not at all. Being deductible as a reasonable payment, there was no authority vested in the Commissioner to disregard the actual transaction and to readjust the income on another basis which did not respond to the facts.

The case of *United States* v. *Anderson,* 269 U. S. 422, is not in point, as there the liability for the munitions tax at a fixed rate had accrued in the earlier year (1916) and was a charge on the business of that year, although the precise amount was ascertained and was payable in 1917. In

*American National Company* v. *United States,* 274 U. S.
99, there was a contract providing definitely for the payment.   Compare *Lucas, as Commissioner of Internal Revenue* v. *American Code Company,* 280 U. S. 445.

*Judgment affirmed.*