*Decision will be entered for the respondent.*

MACON OIL AND GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30146.   Promulgated May 6, 1931.

*W. Leo Austin, Esq.,* and *L. E. Cahill, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

OPINION.

BLACK: The first error assigned relates to the disallowance of $20,000 claimed by petitioner as a deduction for salaries paid to officers and employees during the fiscal year under consideration. The facts with reference to this transaction have been fully stated in our findings of fact.

In *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115, the Supreme Court had before it a similar question arising under the corresponding section of the Revenue Act of 1918, which is identical with those here involved and the court there said:

The payments in the present instance were actually made in the year 1920. The expenses represented by these payments were incurred in that year, for it is undisputed that there was no prior agreement or legal obligation to pay the additional compensation. This compensation for past services, it being admitted that it was reasonable in amount, in view of the large benefits which the corporation had received as the fruits of these services, the corporation had a right to pay, if it saw fit. There is no suggestion of attempted evasion or abuse. The payments were made as a matter of internal policy having appropriate regard to the advantage of recognition of skill and fidelity as a stimulus to continued effort. There was nothing in the income tax law to preclude such action. On the contrary, the payments fell directly within the provision of section 234(a) as a reasonable allowance for compensation for personal services actually rendered. The statute does not require that the services should be actually rendered during the taxable year, but that the payments therefor shall be proper expenses paid or incurred during the taxable year.

On the authority of this opinion, this issue must be decided in favor of the petitioner.

The second issue relates to the deductibility as a loss incurred in the taxable year of $59,959.46, which is the stipulated cost of Lot 40, in the White lease. Only one producing oil well had been brought in on Lot 40. The surrounding territory was not producing oil and the development work indicated an unsatisfactory structure for the successful production of oil or gas on this particular area. However, the well on Lot 40 was of sufficient production to satisfy the terms of the lease and " hold " it and at the close of the fiscal year the petitioner had not been able to dispose of the lease, nor had White, the lessor, taken any steps to terminate the lease. The petitioner in its books and on its return treated the cost of Lot 40 as part of the cost of the part of the lease sold to the Phillips Petroleum Company. As the development work was done under a contract, the petitioner had no interest in the equipment on the lease.

The pertinent section of the Revenue Acts is 234(a)(4), which reads the same in both the 1924 and the 1926 Acts, and which is as follows:

(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*        \*        \*        \*        \*        \*        \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. \* \* \*

The lease from J. H. White to J. F. Shipley dated December 2, 1919, under which petitioner held, contained a clause reading as follows: " It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the lessee." Petitioner admits that the lease on Lot 40 did not expire on December 2, 1924, five years after the date of the original lease, because there was a well on Lot 40, which was producing about two barrels of oil a day. Petitioner contends, however, that although said lease was " held " by it at the end of the fiscal year, April 30, 1925, nevertheless it was worthless at that time and petitioner had abandoned it. We do not think the evidence sustains this contention. Plainly the two-barrel well on Lot 40 was producing oil long after April 30, 1925.

Evidently the lease was abandoned when it was released back to White, the fee owner of the land and that did not occur until after April 30, 1925. We think the situation we have before us in this proceeding is not substantially different from that which was

before us in *A. T. Jergins Trust*, 22 B. T. A. 551, in which case we said:

> The petitioner contracted to make the payments necessary to keep all of the leases in existence. These undertakings, particularly the latter, indicate that the parties did not consider the leases to be worthless. It may be that they were regarded as of little value but, if the parties were willing to continue to pay the rents and royalties necessary to keep such leases alive despite two dry holes, they evidenced their opinion of some value. In a case such as this it would be more reasonable to fix the date of worthlessness as being the date when the parties refused to pay further rents and royalties.

In the instant case petitioner did not have to pay any more rental to hold the lease on Lot 40 after the date of bringing in the well, which produced about two barrels of oil daily. Therefore, the date of abandonment of the lease on Lot 40, involved in this proceeding, was when the owners of the two-barrel well ceased pumping it and petitioner released the land back to the fee owner of the land. Up until that date, White, the fee owner of the land, had no right or authority to lease the land to any one else. This abandonment did not occur until after the taxable year. Petitioner is not entitled to the deduction which it claims on this item. Cf. *A. H. Fell*, 7 B. T. A. 263.

The remaining issue relates to the computation of depletion, and raises the question whether the profit on the sale of leases is a part of the gross income from property within the scope of section 204(c)(2) of the Revenue Act of 1926, which reads as follows:

> The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—
>
>     \*        \*        \*        \*        \*        \*        \*
>
> (2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

The petitioner's contention is that Congress, under the above section of the Revenue Act of 1926, intended to include as a measure of the allowance for depletion, the profit received from the sale of the property, regardless of the fact that the proceeds of the sale of the property have no relation to the receipts from the operation of the property. The respondent's position is that " gross income from the property " refers to income from operations as distinguished from the gain derived or proceeds from the sale of the property.

In the case of *Darby Lynde Co.* v. *Alexander, Collector*, 44 Fed. (2d) 186, the District Court for the Western District of Oklahoma

had this same question before it and there held that depletion deductions as to oil and gas properties under section 204(c)(2) of the Revenue Act of 1926, providing for a deduction of 27½ per cent of the gross income from the property during the taxable year, may not be based on the amount received from the sale of the properties themselves. The court there said: " This court is of the opinion that a careful reading of the section involved in this case will show that the construction which has been placed upon it by the Revenue Department is the proper construction, and that gross income from property has a distinct meaning as compared to gross income from the sale of property."

We think the cited case states the law correctly. Accordingly, as to this issue, the determination of the respondent is approved.

*Decision will be entered under Rule 50.*