Amsterdam Building Company v. Commissioner.
Amsterdam Bldg. Co. v. Commissioner
Docket No. 235.
United States Tax Court
1944 Tax Ct. Memo LEXIS 373; 3 T.C.M. (CCH) 127; T.C.M. (RIA) 44038; February 10, 1944
*373 Albert Foreman, Esq., 521 Fifth Ave., New York, N. Y., for the petitioner. F. S. Gettle, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income, declared value excess profits, and excess profits taxes for the calendar year 1940 as follows: Income Tax
$10,087.44
Declared value excess profits tax
2,941.99
Excess profits tax
6,522.12
Total
$19,551.55
The petitioner alleges that the respondent erred in the determination of the deficiencies by (1) disallowing the deduction of $25,000 of a total of $50,000 paid to the two officers of the petitioner as compensation for services rendered, and (2) disallowing the deduction of bad debts in the amount of $12,950. Findings of Fact The petitioner is a corporation organized and existing under the laws of the State of New York. It was incorporated in 1905. The return for the calendar year 1940 was filed with the collector of internal revenue for the third district of New York. The petitioner is a general contractor and has been specializing for the last 10 years in construction work for the State of New York. Excavations, concrete, *374 masonry, carpentry, and other items, are done by the petitioner corporation, and such work as roofing, tar work and plastering, is usually let to subcontractors. Construction jobs are usually obtained by the petitioner by bidding upon proposals for construction work. The business is highly competitive. Thomas H. Maxwell was during the taxable year and for many years prior thereto president and Lawrence A. Lenoir was secretary-treasurer of the corporation. They were the only officers of the corporation and also its only directors. Each owned 50 percent of the total stock. Operations in the field are handled principally by Maxwell. When Maxwell was not attending construction jobs he spent his time in the office attending to the ordering of materials and attending to matters of organization and management. Lenoir spent much time in the office and occasionally made visits to the jobs under construction. Both Maxwell and Lenoir during the taxable year, and for many years prior thereto, had devoted all their business time to the corporation. The success of the business rests entirely upon the shoulders of these two men. The volume of gross business transacted by the petitioner from 1933 *375 to 1940, inclusive, was as follows: 1933
$ 438,470
1934
801,450
1935
457,164
1936
273,283
1937
442,752
1938
281,973
1939
449,296
1940
1,395,310
Net profits and losses after deducting officers' salaries, as shown by the petitioner's books for the years 1933 to 1940, inclusive, were as follows: Year
Profit
Loss
1933
$ 4,736.86
1934
24,748.77
1935
11,140.86
1936
187.78
1937
83.84
1938
$ 1,620.45
1939
13,784.51
1940
21,807.84
The total salaries paid to Maxwell and Lenoir, always in equal amounts, fluctuated with the volume of business done. In 1930 each was paid a salary of $15,000. When the depression came the joint owners of the petitioner agreed that in order to keep the company going they would reduce their salaries to a bare subsistence and would boost their salaries upward when business warranted. In 1936 each drew a salary of $2,000; in 1937 a salary of $4,000; in 1938, $6,000; in 1939, $12,500; in 1940, $25,000. In the determination of the deficiency the respondent has allowed each officer a salary of $12,500 and has disallowed the balance, a total of $25,000. Since the payment of $25,000 to each officer in 1940 was intended *376 to compensate him not only for services performed in 1940 but for prior years when they did not receive adequate compensation, the total amount represents reasonable compensation for services rendered. The petitioner was the holder of notes of Frederick W. Rockwell in the amounts of $6,500 and $4,000, respectively. The $4,000 note was dated February 16, 1932, and the $6,500 note April 14, 1932. These notes were given to the petitioner as the balance due on a house built for Rockwell in Norfolk, Conn. On April 29, 1932, a loan was made by the petitioner to Rockwell in the sum of $3,000 for which the petitioner took security in the form of 20 shares of Albany Hotel Corporation stock. Against the notes of $6,500 and $4,000 the petitioner allowed Rockwell a credit of $250, which left an unpaid balance of $10,250. No payment was made on the $3,000 note. The assets securing the note were sold for $300, leaving a net unpaid balance of $2,700. Rockwell had been the head of the Ten Eyck Hotel, of Albany, New York, and the Ten Eyck Hotel & Operating Co., and was the largest stockholder of each. He was also the largest stockholder of the operating company for the Onondaga Hotel. Rockwell filed *377 a petition in bankruptcy on September 26, 1936, listing as a part of his liabilities his liability to the petitioner. The secured claims against the bankrupt estate amounted to $793,425.93 and unsecured claims to $115,748.24. Assets of Rockwell consisted of real estate, stocks, and bonds amounting to $200,820. The petitioner did not file a proof of claim against the bankrupt estate. Rockwell had informed the petitioner's officers that he intended to pay his indebtedness to the petitioner. This is the alleged reason for not filing proof of claim. After bankruptcy Rockwell had no assets and no source of income other than a job with the Ten Eyck Hotel, of Albany, New York, which paid him only a nominal salary. On April 10, 1939, the United States District Court for the Northern District of New York ordered that the referee's report with respect to the bankrupt be approved and ordered that a discharge be granted to the bankrupt, discharging and releasing him from all of his provable debts, excepting only those which were exempt by statute. The notes of Rockwell in the respective amounts of $4,000, $6,500, and $3,000, less credits thereon amounting to $550, or a total of $12,950, became *378 worthless in 1939. Opinion The first question for decision is the right of the petitioner to deduct from gross income the full amount of $50,000 paid to the petitioner's officers in 1940. The respondent has disallowed one-half of the total amounts paid to the officers as being in excess of reasonable compensation for services rendered. The taxing statute, section 23(a) I.R.C., permits the deduction from gross income of a "reasonable allowance for salaries or other compensation for services actually rendered." The question here is as to whether the amounts paid to the officers in 1940 were in excess of reasonable amounts for compensation. The evidence shows that the total amount paid to the petitioner's officers in 1940 was not intended to compensate them merely for services that had been performed in that year but to compensate them in part for services rendered in prior years. The situation in this case is practically the same as obtained in Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 74 L. Ed. 733, 50 S. Ct. 273, in which the Supreme Court held that where compensation paid in a given year was intended to compensate the officers not only for services performed in that year *379 but for prior years and the total amount of compensation was not in excess of reasonable compensation for services rendered during the taxable year and prior years, the total amount is deductible. We think that is the case here and in accordance with the above cited case the contention of the petitioner that it is entitled to deduct the full amount of $50,000 is sustained. The second question is whether the petitioner is entitled to deduct as bad debts an amount of indebtedness owed it by Frederick W. Rockwell. Section 23 (k) of the Internal Revenue Code, as amended by the Revenue Act of 1942, permits the deduction of "Debts which become worthless within the taxable year." See Central National Bank of Richmond, 1 T.C. 244. The petitioner's officers represent that they had an arrangement with Rockwell whereby Rockwell agreed to pay the petitioner his debts to it even though he was absolved from the payment of debts by reason of his discharge in bankruptcy in 1939. The evidence is somewhat confusing as to the arrangement with Rockwell. The evidence is clear, however, that after receiving his discharge in bankruptcy Rockwell had no assets and had a position *380 with the Ten Eyck Hotel, of Albany, which paid him only a nominal salary. We think from a factual standpoint the debts became worthless in 1939. The action of the respondent in disallowing the deduction of Rockwell's indebtedness to it for 1940 is approved. Decision will be entered under Rule 50.