Albemarle Plumbing and Heating Company, Inc. v. Commissioner.
Albemarle Plumbing & Heating Co. v. Commissioner
Docket No. 2346.
United States Tax Court
1944 Tax Ct. Memo LEXIS 196; 3 T.C.M. (CCH) 637; T.C.M. (RIA) 44218; June 22, 1944
*196 N. A. Townsend, Esq., for the petitioner. Elmer L. Corbin, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves deficiencies in income tax, declared value excess-profits tax and excess-profits tax as follows: Declared Value
Excess-
Income
Profits
Excess-
Year
Tax
Tax
Profits Tax
1940
$ 60.05
$55.33
$ 102.62
1941
5,117.34
10,521.94
Respondent disallowed in part the deduction of salaries paid by petitioner to its two principal officers-stockholders and their wives on the ground that they were excessive. The controversy concerns the propriety of this action. A second issue relating to invested capital has been conceded by respondent to which concession effect will be given in the recomputation under Rule 50. The tax returns for the taxes in question were filed on an accrual basis with the collector for the district of North Carolina at Greensboro. The case was submitted upon a stipulation of facts, herewith adopted accordingly, and oral and documentary evidence. Our findings of fact include a summary of the stipulation and so much of the facts otherwise adduced as we deem material. Findings *197 of Fact Petitioner is a North Carolina corporation engaged in the business of making plumbing and heating installations under contract and on the basis of cost plus a fixed fee. Its principal office is located at Albemarle, N. C. Petitioner has been in existence since 1930 and its officers and stockholders have remained the same since 1934. They are H. S. Ritchie, president and owner of 79 shares, Mrs. H. S. Ritchie, vice-president and owner of 1 share and M. W. Herrin, secretary and treasurer and owner of 70 shares. Each share of stock is of the par value of $100. Only the 150 shares held as aforesaid have been outstanding since 1934. The three named persons constituted its board of directors. In 1934 petitioner was doing business exclusively in three of North Carolina's 100 counties. In 1938 it was doing business in five states and by 1941 it had contracts for the performance of work in eight states. Its outermost jobs were 1100 miles apart. This expansion was due solely to the endeavors of Ritchie and Herrin. Petitioner's sales, expenses, profits, earned surplus and total assets from 1936 through 1941 are as follows: Sales
1941
1940
1939
1938
Contract Work
$ 276,773.49
$240,923.44
$244,406.61
$117,471.88
Fixed fee Work
2,249,921.22
717,813.80
Cost of Sales-Material
and Labor
Contract Work
215,406.78
200,294.80
219,528.35
98,796.63
Fixed Fee work
2,198,708.13
701,474.80
Gross Profit
112,579.80
56,967.64
24,878.26
18,675.25
Officers' Salaries
H. S. Ritchie
25,800.00
12,000.00
2,600.00
2,600.00
M. W. Herrin
31,645.68
13,654.52
2,600.00
2,080.00
Total Salaries and
Expenses
94,403.59
47,191.62
22,964.43
18,685.24
Net Profit
18,176.21
9,776.02
1,913.83
(9.99)
Net Income after Interest
and Provision for
Taxes
9,032.47
8,100.81
2,794.22
686.83
Earned Surplus Dec. 31st
(Deficit)
5,025.92
(4,006.55)
(12,107.36)
(14,901.58)
Assets Dec. 31st
109,172.29
154,809.97
168,546.30
41,157.13
*198 Sales
1937
1936
Contract Work
$134,653.11
$138,815.11
Fixed Fee Work
Cost of Sales-Material
and Labor
Contract Work
118,613.35
117,433.35
Fixed Fee work
Gross Profit
16,039.76
21,381.76
Officers' Salaries
H. S. Ritchie
2,600.00
4,784.50
M. W. Herrin
1,820.00
2,950.23
Total Salaries and
Expenses
16,213.70
21,654.53
Net Profit
(173.94)
(272.77)
Net Income after Interest
and Provision for
Taxes
1,142.28
522.46
Earned Surplus Dec. 31st
(Deficit)
(15,588.41)
(16,730.69)
Assets Dec. 31st
20,551.47
27,195.95
The fixed fee work shown on the above chart, to the extent of approximately $2,800,000 thereof, represents petitioner's plumbing and heating contract for the extension of the Fort Bragg Army cantonment at Fayetteville, N.C. The work was commenced in October, 1940 and was completed in eight months. Petitioner was required to advance monies for materials and payrolls, but was reimbursed for all authorized expenditures. In connection with this job, petitioner executed approximately 2500 orders for supplies, materials and equipment and employed as many as 1627 men at once. It installed about 40,000 plumbing fixtures at Fort Bragg and in addition equipped two *199 large hospitals and two 40,000-man laundries. The balance of the fixed fee work shown on the chart was done on the Cherry Point Marine Base at Cherry Point, N. C. Petitioner was awarded this contract after its completion of the Fort Bragg job and commenced work at Cherry Point during the latter part of 1941. Petitioner did not run the cost of material and labor expended in connection with the fixed fee contracts through its regular books, except to the extent of certain expenditures which were not approved by the government. The fixed fee was included in its books as income. Petitioner had no responsibility as to what the fixed fee jobs would cost. Its fee was specific regardless of the cost. The Fort Bragg job was completed for about $200,000 less than the government's estimate. Ritchie was not a plumber but nevertheless had been in the plumbing business since 1922. As president of petitioner he assumed the administrative, financial and promotional end of the business. He was the contact man. He cultivated contractors, arranged for bid and performance bonds, negotiated for loans, collected bills, supervised the office and was generally responsible for procuring contracts. He spent *200 50% of his time from 1934 through 1938 traveling about seeking business. By 1939 petitioner had contracts for several good sized jobs among the southern states. Most of them were P.W.A. projects. From 1939 on Ritchie continue to travel but did so for the purpose of keeping in touch with the various jobs. This was especially true after the commencement of the Fort Bragg contract which demanded most of Herrin's time. Ritchie's duties were then increased. He traveled by automobile and drove about 20,000 miles in 1941. During the year he worked from 12 to 16 hours a day, all in behalf of petitioner. Herrin was a master plumber. He handled the mechanical end of the business. He estimated the costs of jobs, prepared bids, supervised the installation, hired labor and purchased materials. He was entirely responsible for the prosecution and timely completion of the Fort Bragg job of which he was superintendent of construction. In connection with this work he drew plans in the rough and obtained bids for all purchases of equipment, supplies and materials which the government insisted be bought on a competitive basis. His duties required him to live in Fayetteville where he rented quarters. *201 Herrin was not a licensed engineer but did perform engineering work. A superintendent of plumbing and a superintendent of heating employed by petitioner for the fixed fee jobs were each paid $125 per week plus a bonus in 1941 of $2500. During 1941 Herrin worked from 12 to 16 hours a day in petitioner's behalf, spending 90% of his time at Fort Bragg while that contract was being performed. He then moved to Cherry Point. Petitioner was required to finance its payrolls and material purchases. It borrowed from banks for this purpose and Ritchie and Herrin had to personally endorse petitioner's paper in order to procure the necessary loans. They also personally made loans to petitioner during 1940 and 1941. Petitioner was required to refinance each payroll on the Fort Bragg job. At one point it owed $325,000 to banks and its average indebtedness was $150,000 during the term of the Fort Bragg construction. Petitioner had to wait 60 days for its first reimbursement under this cost plus fixed fee contract. Thereafter it was reimbursed every two to three weeks. The increase in the 1941 salaries of Ritchie and Herrin was authorized by the directors in the middle of 1941. It was testified *202 that this action was taken because petitioner had the Fort Bragg job, the work of Ritchie and Herrin was continuing to increase, they were put to much trouble and strain and it was felt that as the officers were able to handle the work at Fort Bragg so efficiently they were entitled to the increase. The salary of both men was raised from $12,000 to $25,800 and Herrin received a percentage of the profits to compensate him for the sacrifice of his home life, thus making his total salary $31,645.68. Respondent disallowed the deduction of each of these salaries to the extent of $10,800. During 1940 and 1941 Mrs. Ritchie, petitioner's vice-president and the wife of its president, traveled with Ritchie on his longer trips. She helped drive the car, took notes, typed letters and witnessed signatures. When she was not with Ritchie she spent part of her time at petitioner's office assisting with the bookkeeping, payrolls, contracts and forms and making some decisions. The regular bookkeeper was paid $30 per week. During the first five years of petitioner's corporate existence Mrs. Ritchie had been employed as a stenographer full time at a salary of $10 per week. Mrs. Ritchie was paid a salary *203 of $750 in 1940 and $3500 in 1941. Respondent disallowed the deduction of such salary except in the amount of $250 each year. During 1940 and 1941 Mrs. Herrin, the wife of M. W. Herrin, occasionally assisted Herrin with work which he brought home at night. She could not type but took down in longhand figures which her husband gave her. Herrin had a regular secretary during normal working hours. In the summer of 1941 Mrs. Herrin made the first payroll at the Brunswick, Ga., Housing job. Mrs. Herrin was paid a salary of $750 in 1940 and $3500 in 1941. Respondent disallowed the deduction of such salary except in the amount of $250 each year. Petitioner paid no dividends through the year 1941. The reasonable amounts of salaries and compensation allowable and deductible by petitioner for the services of Ritchie, Herrin and their wives for the year 1941, and for the services of Mrs. Ritchie and Mrs. Herrin for the year 1940, are as follows: 1940
Mrs. H. S. Ritchie
$ 750.00
Mrs. M. W. Herrin
250.00
1941
H. S. Ritchie
$15,000.00
M. W. Herrin
20,845.68
Mrs. H. S. Ritchie
1,500.00
Mrs. M. W. Herrin
250.00
Opinion During the taxable years 1940 and 1941 petitioner paid *204 salaries to the following persons in the stated amounts: 1940
1941
H. S. Ritchie, president
$12,000.00
$25,800.00
M. W. Herrin, secretary
and treasurer
13,654.52
31,645.68
Mrs. H. S. Ritchie
750.00
3,500.00
Mrs. M. W. Herrin
750.00
3,500.00 It deducted such salaries from gross income as ordinary and necessary business expense under section 23 (a) of the Internal Revenue Code. Respondent has ruled the 1940 salaries excessive to the extent of $500 paid each of the women and the 1941 salaries excessive to the extent of $10,000 paid each of the men and $3,250 paid each of the women. He diminished the deductions accordingly, which accounts, in part, for the disputed deficiencies. The sole issue is whether respondent erred in taking the above action. Upon petitioner falls the burden of establishing that the salaries paid were reasonable compensation for services performed for it by each recipient. The Shield Company, Inc., 2 T.C. 763; Wagegro Corporation, 38 B.T.A. 1225. Conversely, his proof must show that the amounts allowed by respondent were unreasonably small, since respondent's determination is *205 presumptively correct. Crescent Bed. Co., Inc. v. Commissioner, 133 Fed. (2d) 424; A. David Company v. Grissom, 64 Fed. (2d) 279. The facts are clear and have been set forth in our findings in considerable detail. The parties differ only as to some of the inferences and conclusions to be drawn therefrom. Petitioner, in support of its position with reference to the salaries of Ritchie and Herrin, bears heavily on the Fort Bragg job and emphasizes the skill and care required of the men, the size of the job accomplished, and the speed with which it was completed. It also points to the "phenominal" growth in business due solely to the endeavors of Ritchie and Herrin, the "nominal" salaries paid them in earlier years, the continual use of their personal credit, their loans to petitioner, the long hours devoted to their work and other factors as justifying the salary increases awarded them. On the other hand, respondent declares that the evidence fails to show that Ritchie and Herrin are possessed of exceptional ability or skill, submits that the Fort Bragg job did not raise any special problems, argues that petitioner at all *206 times was a small corporation and suggests that the cost of the fixed fee work, resulting from the government's program, is not properly includible in petitioner's gross business for comparative purposes. Without disparaging the accomplishments of petitioner's officers, we, nevertheless, agree with respondent. It seems to us that the acquisition of the two fixed fee government contracts must be charged largely to a number of fortuitous circumstances only remotely connected with or attributable to the individual abilities of Ritchie and Herrin. Moreover, since the risk under those contracts was principally upon the government, with the cost a secondary item and immaterial as far as petitioner's profit was concerned, we think it misleading to treat them as evidencing a tenfold expension of petitioner's business. Disregarding the fixed fee contracts, petitioner's business shows a reasonable, but not spectacular, growth and one which still left petitioner a small concern, as is indicated by its total assets. The Fort Bragg job required petitioner's officers to work longer hours and under greater strain and tension. Ritchie had the ticklish work of financing the job on the proverbial "shoestring". *207 Herrin was responsible for the construction and its timely completion. An increase in their compensation was warranted, to be sure. But it is not realastic to attach to the fixed fee contracts a significance with respect to petitioner's size and importance measured by the cost of labor and materials involved therein. This is demonstrated by the fact that less than onehalf of petitioner's 1941 gross profit arose from the fixed fee work, although the costs of performance were over ten times those of all its regular contracts combined. With this explanation of our view of the evidence we proceed. In 1939 petitioner paid Ritchie and Herrin each a salary of $2,600. If the question here to be decided were merely the unreasonableness of a like salary in 1941, then we would be compelled to uphold petitioner. But this is not the question, for respondent has allowed petitioner the deductions in 1941 of a salary of $15,000 to Ritchie and $20,845.68 to Herrin. Such amounts certainly cannot be classified as insubstantial. Moreover, they represent very large increases over 1939 salaries and significant increases over those paid and allowed in 1940. It thus is obvious that respondent has given *208 recognition to many of the factors relied upon by petitioner to justify the increased salaries. Petitioner's problem is to show that respondent has not given sufficient recognition; that in spite of the considerable raises approved, the amounts allowed are unreasonably small. This is a most difficult problem, requiring at least evidence of a current rate in closely similar businesses. L. & C. Mayers Co., Inc. v. Commissioner, 131 Fed. (2d) 309, cert. den. 318 U.S. 773. No such evidence is in the record. Petitioner advances the doctrine of Lucas v. Ox Fibre Brush Co., 281 U.S. 115, to the effect that a corporation may deduct additional compensation given for services performed in prior years. The case is not in point, for it is not shown that Ritchie's and Herrin's salaries were paid in whole or in part for that purpose. We conclude and have found that the amounts allowed by respondent as deductible salaries to Ritchie and Herrin constitute reasonable compensation for their services. Petitioner's evidence falls short of proving respondent erred in this respect. We also sustain respondent with *209 respect to Mrs. Herrin's salary. The evidence discloses that she met the first payroll at the Brunswick, Ga., Housing job in 1941 when her husband was unable to arrive there in time to do so. She also occasionally assisted Herrin at night while he was on the Fort Bragg job by writing down computations which he gave her. Without deciding whether or not she can be said to have rendered any service to petitioner, as distinguished from her husband, it is clear that the amount allowed by respondent is in any event adequate considering the nature and the amount of work performed by her. The same conclusion is not warranted as to Mrs. Ritchie. She rendered substantial services to petitioner in the absence of which someone else would have had to be employed. She assisted at the office, acted in a secretarial capacity to her husband, was familiar with petitioner's affairs and as its vice-president made some decisions. We have found that the salary paid her in 1940 was reasonable. Her duties increased in 1941. Still she did not devote her entire time to working for petitioner. In our opinion respondent's allowance was too low and the salary of $3,500 actually paid was unreasonably high. In *210 these circumstances we must make a finding of a reasonable salary based upon such evidence as is before us. Wagegro Corporation, supra:Cohan v. Commissioner, 39 Fed. (2d) 540. Petitioner paid its full time bookkeeper $30 per week. Mrs. Ritchie received $10 per week as a stenographer during the early years of petitioner's existence. We have found $1,500 to be a reasonable allowance for Mrs. Ritchie's 1941 compensation. Petitioner contends that the $3,500 paid to each of the women in 1941 was partly in consideration of past services rendered by them at grossly inadequate salaries. This is not supported by the evidence. The record does not disclose the amount, character or remuneration paid for services of Mrs. Ritchie and Mrs. Herrin in prior years except as noted above with reference to Mrs. Richie's stenography. Thus, there is no basis upon which to allow salary for past services of Mrs. Herrin and, without more, there is no reason to believe that Mrs. Ritchie was not fully compensated for such work by her former salary. Decisions will be entered under Rule 50.