Jewell Ridge Coal Sales Company, Inc. (formerly Virginia Smokeless Coal Company, Inc.) v. Commissioner. Jewell Ridge Coal Corporation v. Commissioner.
Jewell Ridge Coal Sales Co. v. Commissioner
Docket Nos. 53717, 53777.
United States Tax Court
T.C. Memo 1957-30; 1957 Tax Ct. Memo LEXIS 222; 16 T.C.M. (CCH) 140; T.C.M. (RIA) 57030; February 14, 1957
*222 Held, bonuses paid by petitioners to a corporate official were reasonable compensation for past services rendered by him, and deductible in full as ordinary and necessary trade or business expenses. Richard A. Mullens, Esq., Robert K. Eifler, Esq., and William T. Plumb, Jr., Esq., for the petitioners. Marion B. Morton, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion Respondent has determined the following deficiencies in income tax in these consolidated proceedings: Docket
No.
Petitioner
Year
Amount
53717
Jewell Ridge Coal Sales
Company, Inc.
1949
$ 7,469.69
53777
Jewell Ridge Coal Corp.
1949
16,645.81
The issue for decision is whether bonuses paid by petitioners to a corporate official were deductible *223 by them as reasonable compensation for past services actually rendered. Jewell Ridge Coal Sales Company, Inc., claims an overpayment in income tax for the year 1949 on the basis of an uncontested adjustment contained in the notice of deficiency. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Both Jewell Ridge Coal Corporation (hereinafter referred to as Jewell Ridge), a coal producing corporation, and Jewell Ridge Coal Sales Company, Inc. (hereinafter referred to as the Sales Company), a coal selling corporation, were organized under the laws of Virginia. The Sales Company was incorporated May 8, 1946, as the Virginia Smokeless Coal Company, Inc. Effective September 1, 1954, its name was changed to Jewell Ridge Coal Sales Company, Inc. At all times material herein, both corporations maintained their principal offices at Tazewell, Virginia. Each petitioner filed a corporation income tax return for the calendar year 1949 with the former collector of internal revenue at Richmond, Virginia. One of the organizers of Jewell Ridge in 1910 was George W. St. Clair, who, until his death, served *224 as its president. During the period from 1932 to 1939, he drew an annual salary of $12,000. Huston St. Clair (hereinafter referred to as St. Clair) was engaged in the practice of medicine in May of 1932, when, at the request of his father, the aforementioned George W. St. Clair, he left the medical profession to devote his energies to the coal business. In 1939, upon his father's death, he was elected president of petitioner, Jewell Ridge, and has served the corporation in that capacity since that time. His initial annual salary was $12,000. Though he considered this amount inadequate compensation for his father as well as himself, St. Clair did not request an increase. He considered that, should the corporation prosper under his direction, he would be rewarded for his efforts. From 1939 through 1949, St. Clair acted as Jewell Ridge's chief executive officer, assuming the duties incumbent upon such office. From September 1, 1944 until August 31, 1946, he was also president of the Clinchfield Coal Company. During this period, though he remained as president of Jewell Ridge, he drew no salary from it. St. Clair was an outstanding coal mining executive. He was recognized in the *225 coal industry as a top production and sales executive. In August 1943, he was appointed by the Secretary of the Interior to the position of assistant deputy to the Coal Mines Administrator. His duties were to represent the entire bituminous coal industry in the United States. During the length of this appointment, a period of 10 weeks, St. Clair spent most of his time in Washington. In the latter part of the 1940's, but prior to 1949, he was appointed by the governor of Virginia to serve as adviser and consultant to that State's Coal Commission. Prior to its incorporation in 1946 as the Virginia Smokeless Coal Co., Inc., the Sales Company was operated as a partnership. From incorporation through 1949, it acted as the exclusive sales agent for Jewell Ridge, also selling coal from other sources. It maintained branch offices in Chicago, Cleveland, and Cincinnati, and had sales representatives in the east and throughout the middle west. When St. Clair left medical practice to devote his time to the coal business, he at first was engaged in sales, becoming a partner in the coal sales partnership. In 1937, he became its managing partner. Upon incorporation of the Sales Company, he was *226 elected its president. A year later, at its annual meeting in May 1947, he was elected chairman of its board of directors, serving in that capacity through 1949. As chief executive officer of the Sales Company, St. Clair was responsible for the employment of its principal personnel, approval of sales contracts, and for general supervision of the financial and public relations aspects of the company. He was recognized in the coal industry as one of its top sales executives, commanding the respect of his competitors. Immediately prior to 1949, St. Clair was receiving a monthly salary of $1,100 from Jewel Ridge. At a meeting of its board of directors on December 13, 1949, it was resolved to increase this salary to $2,500 per month, effective retroactively to January 1, 1949. At this same meeting it was further resolved, subject to stockholder approval, to pay St. Clair a bonus of $50,000 in addition to his salary in 1949. Accordingly, a resolution was adopted, a portion of which provided as follows: "RESOLVED: That this Corporation recognizes the advantage and great value to it of the extraordinary service rendered by its President, Dr. Huston St. Clair, * * * and in consideration *227 of such extraordinary service, this Corporation acknowledges its indebtedness to its President, not fixed by any previous obligation, and, subject to approval by the stockholders of the Corporation, orders that there be paid to him in addition to his regular salary as heretofore fixed and in consideration of his extraordinary services as stated above, the sum of $50,000.00, which amount this Board considers reasonable compensation for such services. "RESOLVED: further that the enlarged scope of our Corporation's business imposing additional duties and demands upon the President warrants substantially increased compensation over the amount heretofore fixed as an annual salary and that in consideration of such increased duties and demands, the salary of the President of this Corporation, beginning January 1, 1949, and continuing until further ordered by this Board, be fixed at the sum of $2,500.00 a month, such compensation to cover all services required by him in behalf of the Corporation." At a special meeting of Jewell Ridge stockholders held the same day, ratification and approval of the $50,000 bonus payment and salary increase were obtained. Of the outstanding stock of Jewell *228 Ridge, approximately 57 per cent was held by stockholders who were, in some manner, related to St. Clair. That figure includes the stock held by St. Clair and his wife which amounted to 11.18 per cent. Jewell Ridge's net sales, net taxable income, dividend payments, compensation and bonus payments to St. Clair, and total compensation paid other corporate officials during the period from 1939 to 1949, inclusive, were as follows: Compensation
Total Other
Net Taxable
and Bonus to
Officer
Year
Net Sales
Income
Dividends
St. Clair
Compensation
1939
$1,545.724.06
$ 28,474.15
$ 78,540.00
$12,000.00
$ 3,900.00
1940
2,259,943.70
193,101.58
98,175.00
12,000.00
3,900.00
1941
2,716,225.46
240,383.69
157,080.00
12,000.00
4,200.00
1942
3,240,158.08
339,708.74
157,080.00
14,000.00
13,200.00
1943
3,408,593.62
224,948.68
117,810.00
15,000.00
13,200.00
1944
3,958.920.55
114,839.10
117,810.00
12,500.00
14,000.00
1945
3,615,774.81
36,884.49
98,175.00
0
13,500.00
1946
3,814,058.25
350,555.55
158,280.00
5,000.00
38,125.00
1947
5,249,692.93
476,902.34
197,850.00
15,000.00
38,125.00
1948
6,201,858.51
960,457.72
138,495.00
14,100.00
45,886.02
1949
5,823,116.87
350,312.37
197,850.00
28,200.00
46,986.02
50,000.00 (1949
Bonus)
*229 Immediately prior to 1949, St. Clair was receiving an annual salary of $6,000 from the Sales Company. At a meeting of this petitioner's directors, held December 29, 1949, it was voted to increase his salary to $15,000 annually, effective retroactively to January 1, 1949. At this same meeting, it was voted to pay him a bonus of $20,000. The corporate minutes reflected such action in the following language: "Huston St. Clair, Chairman of the Board of Directors, and active in the management of the Company, having performed unusual duties which duties have materially increased the revenue received by our Company through sales commissions etc., on motion made, seconded and unanimously carried, was granted additional compensation in the amount of $20,000 and his annual salary was increased to $15,000, effective January 1st, 1949 and the officers of our Company were authorized to make such additional payments of compensation." During the period from 1946 through 1949, inclusive, the Sales Company had gross sales and net taxable income, and made payments by way of dividends, compensation to St. Clair, and compensation to other corporate officers in the following amounts: Compensation
Total Other
Net Taxable
and Bonus to
Officer
Year
Gross Sales
Income
Dividends
St. Clair
Compensation
1946
$3,148,453.07
$109,222.99
$21,225.00
$ 4,000.00
$ 4,000.00
1947
6,308,442.82
258,654.84
61,500.00
6,000.00
25,998.11
1948
8,834,723.76
367,737.64
61,500.00
6,000.00
36,029.55
1949
7,026,158.21
201,783.55
61,500.00
15,000.00
28,448.01
20,000.00 (1949
Bonus)
*230 In the latter part of 1949, or shortly thereafter, St. Clair was offered employment at an annual salary of $75,000 with a corporation engaged in the mining and selling of coal, with a view to his succeeding to the office of its president. He rejected the offer because of his interests in Jewell Ridge. Throughout the period 1941 to 1949, the Ashland Mining Corporation and the Majestic Colleries Company, two coal mining companies whose production statistics were substantially similar to those of petitioner, Jewell Ridge, and their sales corporation whose sales were substantially similar to those of petitioner, Sales Company, paid their two chief executives a combined annual salary of between $53,000 and $60,000 for their services. Together these men performed substantially the same duties for their corporations that St. Clair performed for petitioners. From 1939 through 1949, Eastern Coal Corporation was a coal producing company whose production exceeded that of Jewell Ridge by some 350,000 tons a year. Its sales agent was the Eastern Coal Sales Company, whose annual sales were approximately 400,000 tons less than those of Jewell Ridge Sales Company for the years 1946 through 1949. *231 The following reflects the annual compensation paid by Eastern Coal Corporation for the years 1939 through 1949 to its chief executive, and paid by Eastern Coal Sales Company to its chief executive for the years 1946 through 1949
Eastern CoalEastern Coal
Year Corporation Sales Company
1939 $14,850.00
1940 25,900.00
1941 38,700.00
1942 42,000.00
1943 42,000.00
1944 42,000.00
1945 42,000.00
1946 42,000.00 $13,200.00
1947 42,000.00 13,200.00
1948 42,000.00 14,550.00
1949 42,000.00 15,000.00 On its 1949 income tax return, Jewell Ridge claimed a deduction in the amount of $78,200 for compensation paid St. Clair. [1] Of this amount, respondent disallowed the $50,000 bonus payment, which he determined to be unreasonable compensation. The Sales Company, on its return for 1949, claimed a deduction of $35,000 for compensation paid St. Clair. Of this figure, respondent disallowed as unreasonable the $20,000 bonus. The bonus payments made by petitioners to Huston St. Clair during 1949 represented reasonable *232 compensation for past services which he had rendered to them. Opinion RICE, Judge: In general, reasonable compensation is the amount which would ordinarily be paid for like services by like enterprises in like circumstances. Regulations 111, section 29.23(a)-6. The burden of proving reasonableness is upon the taxpayer. Botany Mills v. United States, 278 U.S. 282 (1929). Whether an amount paid by way of compensation is reasonable presents a question of fact to be determined in the light of the circumstances of each particular case. We are asked to determine whether the bonuses of $50,000 and $20,000 paid Huston St. Clair by petitioners were reasonable in relation to the services actually rendered by him in prior years, for which he assertedly had been inadequately compensated. If reasonable, then petitioners are entitled to deduct them in the computation of their net income for 1949 by reason of section 23(a)(1)(A) [2] of the 1939 Internal Revenue Code. That the services need not be rendered during the taxable year is well settled. It is only necessary that liability for the compensation be either paid or incurred within the year for which deduction is sought. Lucas v. Ox Fibre Brush Co., 281 U.S. 115 (1930). *233 Respondent contends the bonus payments by each corporation were unreasonable in amount and, therefore, distributions of profits which are not deductible. In support of their argument, petitioners presented the testimony of three men, occupying executive positions in the coal industry, as to what they considered would have been a reasonable annual salary for the services performed by St. Clair. These men were familiar with petitioners' mode of operations, and were qualified to express opinions as to the worth of St. Clair's services. As regards Jewell Ridge, they were of the opinion that an annual salary of between $25,000 and $30,000 for the years 1939 to 1945, and between $30,000 and $40,000 for the years 1946 to 1949, would have been reasonable compensation. As regards *234 the Sales Company, they testified that, for the years 1946 to 1949, an annual salary of between $15,000 and $25,000 would have been reasonable. The total compensation which Jewell Ridge paid St. Clair for the years 1939 through 1949, including the $50,000 bonus in 1949, amounted to an average annual compensation of about $20,000 for the entire period. [3] The total compensation paid St. Clair by the Sales Company for the years 1946 through 1949, including the $20,000 bonus paid in 1949, amounted to an average annual compensation of about $14,000 a year for the entire period of three years and eight months. In addition, we have before us evidence of salaries paid for similar services by like enterprises. Though, in each instance, these services were performed by two men rather than one, as here, we do not consider this distinction material. We are convinced that St. Clair, in his individual *235 capacity, performed substantially the same duties for petitioners as these other executives performed for their corporation on a combined basis. We note that each company involved was a competitor of the petitioners. Also, we note that in each instance the salaries paid by them were in excess of those received by St. Clair from petitioners. When we consider such evidence in conjunction with the background, experience, and abilities of St. Clair, the manner in which he guided the fortunes of petitioners, the results directly attributable to his leadership, and the salaries actually paid him in years prior to 1949, we are convinced that the bonuses paid in 1949 for past services were reasonable in amount. Accordingly, petitioners are entitled to deduct them in full as ordinary and necessary trade or business expenses. Decisions will be entered under Rule 50. Footnotes
1. The parties stipulated that St. Clair received $28,200 as salary for 1949. The discrepancy between that figure and the $30,000 salary voted him is not explained.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
3. This computation assumes that Jewell Ridge paid St. Clair $15,000 for each of the years 1944, 1945, and 1946. Actually, Jewell Ridge paid him $12,500 in 1944; nothing for 1945; and $5,000 in 1946. He was president of Clinchfield Coal Company and received a salary from it in 1944, 1945, and 1946.↩