Pearl Royalty Company v. Commissioner.
Pearl Royalty Co. v. Commissioner
Docket No. 3071.
United States Tax Court
1945 Tax Ct. Memo LEXIS 315; 4 T.C.M. (CCH) 131; T.C.M. (RIA) 45049; January 30, 1945
W. H. O'Bryan, Esq., for the petitioner. E. G. Sievers, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent has determined a deficiency in income tax against petitioner for the year 1939 in the amount of $9,777.01. The question is whether portions of the amounts paid by petitioner to three of its stockholders in 1939 constituted reasonable salaries or compensation for services rendered by them to petitioner in that year, so as to be deductible by petitioner under section 23 (a) of the Internal Revenue Code. Findings of Fact The petitioner is an Oklahoma corporation. It was organized on September 16, 1927, by Harry C. Pouder and William H. Pomeroy, and had its principal office in Tulsa, Oklahoma. It filed *316 its corporate income tax return for the year 1939 with the Collector of Internal Revenue for the District of Oklahoma. Harry C. Pouder and William H. Pomeroy became associated in the farm mortgage, abstract and general real estate business in Perry, Oklahoma, in 1905. In conducting that business, they operated as a partnership. They moved to Tulsa in 1907, for the purpose of engaging in the oil business, but actually started their oil operations in 1910. These operations were carried on by Pouder-Pomeroy Company, a corporation which they had organized. The petitioner was organized in 1927, for the purpose of dealing in oil and gas properties, leases and royalties. Later, and prior to the taxable year, it was principally engaged in acquiring royalties on structure. It did and does at times acquire leases, but does not develop them. If not sold, such leases are farmed out to operating companies for the purpose of their development, and the petitioner retains an overriding royalty or an oil payment. The petitioner owns no office of its own, but occupies space in the offices of Pouder-Pomeroy Company, in Tulsa. It also has some sort of office arrangement in both Houston and San Antonio, *317 Texas. Over the years, Pouder and Pomeroy had done business with the Roxanna Petroleum Company, later the Shell Petroleum Company, a subsidiary of Royal Dutch Shell, and had become acquainted with Dr. William Van Holst Pellekaan, who was the head of the geological department of the Shell subsidiary. Dr. Pellekaan is an outstanding geologist and geophysicist, and is familiar with the mid-continent and coastal areas in which the petitioner was particularly interested. Pouder and Pomeroy learned that Dr. Pellekaan was retiring from the Shell Company and they began negotiations with a view to procuring his services for petitioner. As a result of these negotiations, the following agreement between the petitioner and Dr. Pellekaan was reached: AGREEMENT "THIS AGREEMENT, Made and entered into this 20th day of June, A.D., 1938, by and between PEARL ROYALTY COMPANY, Party of the First Part, and WILLIAM VAN HOLST PELLEKAAN, Party of the Second Part, WITNESSETH: "THAT WHEREAS, party of the first part is desirous of procuring the services of a geologist; and "WHEREAS, party of the second part is a geologist who has had wide and varied experience in the oil business, "NOW THEREFORE, *318 It is mutually agreed by and between the parties hereto as follows, to-wit: "1. That said first party shall transfer to said second party 1028 shares of stock of the Pearl Royalty Company. "2. Said second party, as a consideration for such transfer of stock, shall, after December 31, 1938, for a period of five years, devote his efforts in procuring and securing geologic information for the Pearl Royalty Company, and shall at all times furnish any information that he has or can obtain that may be of benefit to the said Pearl Royalty Company in regard to any particular lands or area. In the event of the demise of the second, party before the completion of five years services, this contract will be considered fulfilled, insofar as second party is concerned. "3. Said second party shall not for a period of two years from December 31, 1938, transfer or sell any of the said 1028 shares of stock of the Pearl Royalty Company which have been transferred to him, but during said two years said second party shall be entitled to receive any dividends that are declared by said Pearl Royalty Company, and exercise all rights as provided in the by-laws of said Pearl Royalty Company as though he *319 were the absolute owner of said stock, in the direction of the business of the said Pearl Royalty Company. ATTEST: H. C. Pouder, Secretary. PEARL ROYALTY COMPANY, By W. H. Pomeroy, President, Party of the First Part. W. Van Holst Pellekaan, Party of the Second Part." The shares of petitioner's stock used in satisfying petitioner's obligation to Dr. Pellekaan, under the above agreement, were supplied 514 each by Pouder and Pomeroy. The shares were transferred to Dr. Pellekaan pursuant to the terms of the agreement, on the same date that the agreement was executed. Prior to the execution of the agreement on June 20, 1938, the outstanding stock, 2,056 shares, of petitioner, which had a par value of $25 per share, or a total par value of $51,400, was held as follows: Shares
Harry C. Pouder
1,027
William H. Pomeroy
828
William H. Pomeroy, Jr.
200
G. M. Bates
1
After the execution of the above agreement and the transfer of the 1,028 shares to Dr. Pellekaan, as agreed to the stock was held as follows: Shares
William Van Holst Pellekaan
1,028
William H. Pomeroy
314
Harry C. Pouder
513
William H. Pomeroy, Jr.
200
G. M. Bates
1
*320 Under the agreement reached, Dr. Pellekaan was to devote his full time to the business of the petitioner, and it was understood that Pouder and Pomeroy were to devote such time to petitioner's affairs as might be necessary. Pouder was to operate from the offices in Tulsa. Pomeroy was located in San Antonio, Texas, and Dr. Pellekaan in Los Angeles, California. Generally, Pouder was to look after the interests of the petitioner in north Texas, Oklahoma, Arkansas, Kansas, Illinois and Michigan. Pomeroy's activities generally covered Mississippi, Louisiana, southern Texas and New Mexico. Dr. Pellekaan gave some attention to properties being developed in California. It was understood that no properties were to be purchased which had not been approved by Dr. Pellekaan. No salaries for the services to be rendered by Pouder, Pomeroy and Pellekaan were agreed on, but it was understood that if the company made money or its financial condition permitted, some salaries would be agreed upon and paid. Dr. Pellekaan retired from his position with the Shell Petroleum Company in October of 1938, but did not begin his duties with petitioner until January 1939. He moved to Los Angeles, where he established *321 his office with another geologist. Except for his duties with petitioner, he was not otherwise employed. He checked the data on all properties considered for purchase by petitioner and during 1939 made about four trips to Texas or Oklahoma. No royalties were purchased by petitioner without his approval. On occasions when Pouder and Pomeroy did not agree with Dr. Pellekaan, they would purchase the properties under consideration, not for the petitioner, but for Pouder-Pomeroy Company. Pouder owned and operated a stock farm, to which he usually devoted three days each week. He would ordinarily go to the farm on Saturday morning, returning to Tulsa Monday afternoon. The remaining four days he generally divided between Pouder-Pomeroy Company and the petitioner. Pomeroy, generally speaking, divided his time about equally between the two corporations. William H. Pomeroy, Jr., performed no services for petitioner. The services required by the petitioner of its officers were in the studying and choosing of the royalties to be purchased. After purchase, little, if any, work was required. The petitioner merely awaited the development of a property by the owner or the lessee, and, when *322 production had been established, the only activities required were the receipt of the royalty checks, their deposit and the making of the entries upon the books. Occasionally the petitioner would sell or dispose of some royalty or interest, and from time to time, upon exhaustion of the oil or failure of production, the royalty would be condemned, and the petitioner would write its investment therein off the books. The investments made in leases and royalties by the petitioner for the years 1934 through 1939, and its gross income therefrom for such years, were as follows: Year
Investments
Gross Income
1934
$13,154.68
$ 3,804.59
1935
11,664.31
6,557.06
1936
47,584.23
17,490.73
1937
13,516.05
20,478.77
1938
19,231.17
20,456.39
1939
22,705.77
162,562.31 The purchases in 1938 represented four or five royalty interests, while the purchases in 1939 represented about twelve interests. In selecting royalties for purchase, numerous properties and the data with respect thereto were examined and rejected. During 1939, when petitioner's gross income was $162,562.31, approximately eight times its gross income for each of the two years preceding, the income *323 was derived principally from properties in Illinois, acquired in 1938 or posibly 1937. These properties were acquired before Dr. Pellekaan entered upon the performance of services for the petitioner. According to the practice of the petitioner, the primary factor both as to the payment of salaries or compensation to its officers for any given year and as to the amount thereof was the receipt of income and the amount thereof rather than the quantum or quality of the services performed by such officers in that year. When salaries were voted and paid they were voted at the end of the year when the income for the year was determinable. For 1934 and 1935 petitioner paid no salaries. For 1936, when its gross income was $17,490.73, salaries of $3,500 each were voted and paid to Pouder and Pomeroy. In 1937, when the petitioner's gross income was $20,478.78, no salary or compensation was paid to either of them. In 1938, when its gross income was $20,456.39, salaries of $1,500 each were voted and paid to Pouder and Pomeroy. At a special meeting of petitioner's directors on December 22, 1939, the following action with respect to dividends and salaries for officers was taken: "W. H. Pomeroy *324 was Chairman of the meeting, and H. C. Pouder was Secretary. The Chairman called the meeting to order. The Secretary called the roll and the following Directors were present: W. H. Pomeroy H. C. Pouder G. M. Bates constituting all of the Directors of the Pearl Royalty Company. "The Chairman stated that the purpose of the meeting was to declare a dividend payable to the stockholders, and after considerable discussion it was resolved that a dividend of $19.00 per share payable to the stockholders of record as of this date be paid today. "Mr. Pomeroy then stated that the next matter to be taken up by the Board of Directors was the salaries of officers for the year 1939, and pointed out that he and Mr. Pouder had spent only one-half of their time in the Pearl Royalty Company, and that Dr. Pellekaan had spent all of his time in the company's services. "After further consideration and discussion of the matter, it was "RESOLVED, That the salaries for the officers for the year 1939 be and they are as follows: W. H. Pomeroy
$18,750.00
H. C. Pouder
18,750.00
William Van Holst Pelle-
kaan
37,500.00
"There being no further business to come before the Board *325 at this time, the meeting adjourned." For the years 1935 through 1938, the compensation received by Dr. Pellekaan from the Shell Petroleum Company was as follows: Company Contributions to
Provident Fund
Year
Salary
Cash Bonus
Total
Regular
Special
Total
1935
$21,600
$3,000
$24,600
$981.02
$ 981.02
1936
21,600
3,000
24,600
993.99
$ 294.60
1,288.59
1937
21,600
7,500
29,100
989.56
2,918.41
3,907.97
1938
21,600
21,600
977.15
1,160.00
2,137.15
Following are tables showing the income received by Harry C. Pouder and William H. Pomeroy for the years 1927 through 1939: HARRY C. POUDER
STATEMENT OF INCOME
Other
Lease
Year
Income
Salaries
Dividends
Bonds
Total
1927
$24,931.66
$ 4,200.00
$ 29,131.66
1928
8,318.06
30,040.79
38,358.85
1929
13,428.80
54,861.63
68,290.43
1930
1,289.64
$25,000.00
37,977.98
$28,000.00
92,267.62
1931
45.00
5,158.43
5,203.43
1932
27,877.44
5,700.36
33,577.80
1933
90.00
1,787.50
1,877.50
1934
84.10
10,000.00
4,350.00
14,434.10
1935
978.09
7,150.00
8,128.09
1936
1,171.40
4,750.00
5,137.50
11,058.90
1937
151.80
7,600.00
7,751.80
1938
151.87
3,000.00
2,100.00
5,251.87
1939
151.87
18,750.00
11,341.00
30,242.87
$78,669.73
$61,500.00
$177,405.19
$28,000.00
$345,574.92
*326 WILLIAM H. POMEROY
STATEMENT OF INCOME
Year
Other Income
Salaries
Dividends
Total
1927
$24,931.66
$ 4,200.00
$29,131.66
1928
8,318.06
30,040.79
38,358.85
1929
16,929,08
54,965.37
71,894.45
1930
3,856.50
$25,000.00
$37,549.98
66,406.48
1931
1,532.11
5,284.40
6,816.51
1932
28,013.02
5,700.37
33,713.39
1933
578.85
1,575.00
2,153.85
1934
308.75
11,600.00
4,350.00
16,258.75
1935
2,069.25
7,150.00
9,219.25
1936
822.27
4,750.00
5,100.00
10,672.77
1937
519.66
7,600.00
8,119.66
1938
2,490.37
3,000.00
2,100.00
7,590.37
1939
1,305.76
18,750.00
7,541.00
27,596.76
$91,675.84
$63,100.00
$173,156.91
$327,932.75
The following table shows the gross income of petitioner and the Pouder-Pomeroy Company for the years 1927 through 1939: Pearl Royalty
Pouder-Pomeroy
Year
Company
Company
1927
None
1928
$ 5,535.75
1929
11,074.97
$ 18,410.43
1930
6,332.89
178,627.03
1931
1,437.92
75,258.66
1932
2,752.25
22,669.66
1933
7,595.71
8,325.42
1934
3,804.59
20,737.90
1935
6,557.06
21,388.60
1936
17,490.73
19,168.51
1937
20,478.78
20,907.02
1938
20,456.39
13,096.25
1939
162,562.31
13,225.96
$265,079.35
$411,815.44
*327 In its income tax return for 1939, the petitioner deducted as compensation of officers the amount of $75,000, representing payments of $18,750 each to Pouder and Pomeroy and $37,500 to Dr. Pellekaan. In computing the deficiency herein, the respondent has disallowed $55,000 of the deduction so claimed, on the ground that reasonable compensation to the three individuals for the services rendered by them to the petitioner during the taxable year was $5,000 each for Pouder and Pomeroy, and $10,000 for Dr. Pellekaan. The remainder he regarded as the distribution of corporate profits to stockholders. Opinion The petitioner contends that the $75,000 paid to Pouder, Pomeroy and Pellekaan in 1939, pursuant to the resolution of its directors on December 22, 1939, constituted reasonable compensation to them for the services rendered by them to it in that year, and that it is therefore entitled to deduct the said amount as ordinary and necessary expenses in computing its net income. The respondent, on the other hand, claims that $5,000 each to Pouder and Pomeroy and $10,000 to Dr. Pellekaan, or a total of $20,000, as determined by him, was reasonable compensation for the three parties named *328 and that the payments to them in excess thereof were in effect distributions of corporate profits by petitioner to its stockholders. That Dr. Pellekaan is an outstanding geologist and, as chief geologist for a large operating oil company, might be expected to command a salary ranging up to three-fourths or four-fifths of the $37,500 paid to him by the petitioner in 1939, is established by the record, as is the fact that Pouder and Pomeroy have been quite successful in various of their oil activities. We are not here dealing with a large operating oil company, however, but with an oil royalty business, from which the interested parties, by careful selection of properties in newly developed or prospective oil fields, play for a wide margin of profit on their investments. Furthermore, there can be no question that the amounts paid to Pouder and Pomeroy as salaries for the taxable year were wholly out of line with any prior salaries, of which we are informed, paid to them by the petitioner. To illustrate, the highest salary received by them from the petitioner for any year from 1934 through 1938 was for the year 1936, when they received $3,500 each, while for 1934, 1935 and 1937 they *329 received no compensation whatever, and for 1938 received only $1,500 each. And yet, there is no showing that the services rendered by them in 1939 were substantially different in quantity or quality from the services rendered in prior years. The fact is that the payment of salaries and the amount thereof were based primarily on receipts or income for the particular year, rather than the quantity or quality of services rendered during the year. The record shows further that once a royalty interest is acquired, little, if any, work in respect thereto is required, and that in this instance, the work in selecting and acquiring the royalties which produced the substantially greater income which the petitioner received in 1939, and which resulted in the payment as compensation of the large amounts here in question, was done in 1938 or possibly 1937, when the royalty interests were acquired. Pellekaan performed no services for petitioner prior to 1939, and as to Pouder and Pomeroy, there is no claim or showing that the amounts paid to them as salary in 1939 were intended or paid as compensation for services rendered in prior years. Compare Lucas v. Ox Fibre Brush Co., 281 U.S. 115. *330 The petitioner, to support its contention that the amounts paid to Pellekaan, Pouder and Pomeroy constituted reasonable compensation for the services rendered by them in the taxable year, offered the testimony of two individuals who professed to being experienced in the oil royalty business. They were of the opinion that it would not have been unreasonable to employ the individuals here in question on the basis of fifty percent of the profits derived from royalties selected by them or acquired at their instigation. In passing, it may be noted that none of the parties here was employed or paid on any such basis. In contrast with the testimony of the two witnesses mentioned was that of a witness called by the respondent. This witness was a geologist of impressive training and experience, and, as head of a substantially larger royalty company than petitioner he receives a salary of $10,000 per year. With respect to the compensation of Dr. Pellekaan, there is one further difficulty in determining its reasonableness for the taxable year. By instrument executed on June 20, 1938, by and between him and the petitioner, he agreed that for and in consideration of the transfer to him of 1,028 *331 shares of the petitioner's capital stock he would serve petitioner for a period of five years. Pursuant to that agreement, 1,028 shares of petitioner's capital stock were transferred to him on the same day the agreement was executed. The petitioner argues that the acquisition of the shares by Dr. Pellekaan is of no moment here, because the shares transferred to him were furnished by Pouder and Pomeroy individually. The fact remains that the shares were transferred in satisfaction of petitioner's obligation and received by Dr. Pellekaan in consideration of his promise to work for petitioner for a period of five years, and the fact that they were supplied by Pouder and Pomeroy personally, whether with or without cost to petitioner, does not negative the fact that as between petitioner and Dr. Pellekaan they were at least a part of the compensation he was to receive for his services to petitioner in 1939. We are not advised as to the value of the shares in question and are unable to fully consider their effect with respect to the question here to be decided, but there is no question, we think, from the facts which appear of record, that their value was substantially in excess of their *332 par $25of per share. Such being the state of the evidence and the facts established thereby, we are unable to say on the record before us that the respondent erred in his determination. Petitioner's claim of deduction in excess of that allowed by the respondent in his determination of deficiency is accordingly denied. Decision will be entered for the respondent.