Zindler Building, Inc. v. Commissioner.
uilding v. c. v. Commis
Docket No. 25110.
United States Tax Court
1951 Tax Ct. Memo LEXIS 293; 10 T.C.M. (CCH) 216; T.C.M. (RIA) 51065; March 16, 1951
*293 Petitioner is a corporation which owns and operates a four-story building in the City of Houston, Texas. During the taxable years ending January 31, 1945, and January 31, 1946, the first two stories of this building were rented to a retail clothing store and the other two floors were rented to other tenants. Petitioner's president largely managed the building and looked after its operation, devoting part of his time thereto. In each of the taxable years petitioner's board of directors voted certain salary payments to petitioner's president. These salary payments were to cover payment for the services of petitioner's president, not only in the taxable year when such salary was voted but for services rendered in some prior years when no salary was paid to such officer. Petitioner in its income tax returns for the years here in question took deductions for the full amounts of these salaries voted. The Commissioner in his determination of the deficiencies allowed such deductions in part and disallowed the balance on the ground that the amounts disallowed were unreasonable. Held, the Commissioner is sustained in part and reversed in part. The amount of deductions for each of the taxable *294 years is determined. M. U. S. Kjorlaug, Esq., for the petitioner. D. Louis Bergeron, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies against petitioner as follows: Fiscal Year
Declared Value
Excess
Ending
Income
Excess-Profits
Profits
Total
1/31/45
$149.41
$1,147.24
$ 8,924.09
$10,220.74
1/31/46
378.58
851.13
10,608.60
11,838.31
Totals
$527.99
$1,998.37
$19,532.69
$22,059.05 The above deficiencies are due to adjustments made by the Commissioner to net income as reported *295 on petitioner's return as follows: Taxable Year Ended January 31, 1945 ADJUSTMENTS TO NET INCOME Net income for declared value excess profits tax computation as disclosed by return
$20,182.51
Unallowable deductions and additional income; (a) Officers' salaries disallowed
12,100.00
Net income for declared value excess profits tax computation adjusted
$32,282.51
EXPLANATION OF ADJUSTMENT (a) It is held that the amount of $4,200.00 represents reasonable compensation allowable to the corporation for services rendered by A. B. Zindler, President, Sterling Zindler, Vice-president, and Marvin Zindler, acting Vice-president, for each of the fiscal years ended January 31, 1945 and 1946, and for prior taxable years. The salaries claimed as deductions on the returns for the fiscal years ended January 31, 1945 and 1946, as allowed and as disallowed, are shown as follows: Fiscal Year Ended January 31, 1945
Services Rendered
Claimed
Officer
Fiscal Year
Per Return
Allowed
Decrease
A. B. Zindler, President
January 31, 1936
$ 3,000
$1,000
$ 2,000
January 31, 1937
3,000
1,000
2,000
January 31, 1938
3,000
1,000
2,000
January 31, 1945
5,000
1,000
4,000
Totals
$14,000
$4,000
$10,000
Sterling Zindler, Vice-president
January 31, 1945
$ 1,200
$ 100
$1,100
Marvin Zindler, Acting Vice-president
January 31, 1945
1,100
100
1,000
Total for fiscal year ended January 31, 1945
$16,300
$4,200
$12,100
Fiscal Year Ended January 31, 1946
A. B. Zindler, President
January 31, 1939
$ 3,000
$1,000
$ 2,000
January 31, 1940
3,000
1,000
2,000
January 31, 1941
3,000
1,000
2,000
January 31, 1942
1,283
0
* 1,283 *297 January 31, 1946
5,000
1,000
4,000
Totals
$15,283
$4,000
$11,283
Sterling Zindler, Vice-president
January 31, 1946
$ 1,200
$ 100
$1,100
Marvin Zindler, Acting Vice-president
January 31, 1946
1,200
100
1,100
Total for fiscal year ended January 31, 1946
$17,683
$4,200
$13,483
*296 The net loss for the fiscal year 1941, $10,428.72, was claimed as a net operating loss deduction for 1942, resulting in a net loss of $9,218.82, which amount was claimed as a net operating loss deduction for 1943, resulting in a taxable net income of $1,640.73. Details of gross rentals received by petitioner are as follows: Zindler's Inc.
Other Tenants
Gross Rentals
Amounts
%
Amounts
%
1936
$ 14,115.44
$ 9,268.57
65.66
$ 4,846.87
34.34
1937
16,537.48
11,784.04
71.26
4,753.44
28.74
1938
19,371.37
13,798.87
71.23
5,672.50
28.77
1939
16,584.10
11,492.00
69.45
5,056.10
30.55
1940
18,192.01
12,359.51
67.94
5,832.50
32.06
1941
17,636.85
12,751.90
72.30
4,884.94
27.70
1942
20,592.52
16,935.02
82.24
3,657.50
17.76
1943
35,366.28
30,637.53
86.63
4,728.75
13.37
1944
54,849.35
48,539.10
88.50
6,310.25
11.50
1945
59,384.64
52,350.14
88.15
7,034.50
11.85
1946
67,432.68
60,302.19
89.43
7,130.47
10.57
TOTALS
$340,026.70
$280,218.87
82.41
$59,807.83
17.59
After an examination of petitioner's returns, books, and records for the fiscal years ended January 31, 1942 to *298 January 31, 1946, inclusive, respondent advised petitioner of his determination disclosing the following allowance and disallowance of officers' salaries: Claimed in
the Returns
Allowed
Disallowed
1/31/42: A. B. Zindler
$ 1,717.00
$1,717.00
None
1/31/43: A. B. Zindler
$ 2,680.00
$2,680.00
None
Sterling Zindler
2,349.37
1,200.00
$ 1,149.37
Totals
$ 5,029.37
$3,880.00
$ 1,149.37
1/31/44: A. B. Zindler
$12,000.00
$5,000.00
$ 7,000.00
Sterling Zindler
8,400.00
1,200.00
7,200.00
Totals
$20,400.00
$6,200.00
$14,200.00
1/31/45: A. B. Zindler
$14,000.00
$4,000.00
$10,000.00
Sterling Zindler
1,200.00
100.00
1,100.00
Marvin Zindler
1,100.00
100.00
1,000.00
Totals
$16,300.00
$4,200.00
$12,100.00
1/31/46: A. B. Zindler
$15,283.00
$4,000.00
$11,283.00
Sterling Zindler
1,200.00
100.00
1,100.00
Marvin Zindler
1,200.00
100.00
1,100.00
Totals
$17,683.00
$4,200.00
$13,483.00
No appeal was taken from respondent's determination as to the fiscal years 1943 and 1944. A. B. Zindler devoted only part of his time as services to petitioner as its president. The greater part of his time during each of the years *299 in question was devoted to the retail clothing business of B. Zindler's Sons of which he was president. A reasonable allowance for salary to A. B. Zindler for personal services actually rendered to petitioner, Zindler Building, Inc., to be allowed as deductions to petitioner for the fiscal years ending January 31, 1945 and January 31, 1946, is as follows: Fiscal Year Ending January 31, 1945.
For services rendered fiscal year 1936
$1,000
For services rendered fiscal year 1937
1,000
For services rendered fiscal year 1938
1,000
For services rendered fiscal year 1945
5,000
Total to be allowed for fiscal year 1945
$8,000
Acct. of services of A. B. Zindler
Fiscal Year Ending January 31, 1946.
For services rendered fiscal year 1939
$ 1,000
For services rendered fiscal year 1940
1,000
For services rendered fiscal year 1941
3,000
For services rendered fiscal year 1946
5,000
Total to be allowed for fiscal year 1946
$10,000
Acct. of services of A. B. Zindler
Opinion BLACK, Judge: The only issue which we have to decide in this proceeding is as to the amount which should be allowed as deductions to petitioner for each of the taxable years ending January 31, 1945 and *300 January 31, 1946, as reasonable compensation paid to its president, A. B. Zindler, in those years. In our findings of fact we have made a finding of what we regard as a reasonable allowance for salary to A. B. Zindler for personal services actually rendered to petitioner for the respective taxable years ending January 31, 1945 and January 31, 1946. This finding disposes of the only issue which we have before us to decide. We will now give the reasons which moved us to make the findings which we have made for the respective taxable years. The applicable statute and regulations are printed in the margin. [1]
*301 Fiscal Year Ending January 31, 1945. - We shall first take up the fiscal year ending January 31, 1945. In its income tax return for the year 1945 petitioner claimed a deduction of $14,000 as compensation paid its president, A. B. Zindler. Only $5,000 of this compensation was voted to Zindler for his services to the corporation in 1945. For each of the fiscal years 1936, 1937, and 1938, $3,000 was also voted in 1945 and the resolution of the board of directors voting these respective amounts is included in our findings of fact. That a corporation in a proper case may vote its officers compensation for services rendered to it in prior years is settled by Lucas v. Ox Fibre Brush Co. 281 U.S. 115. The Commissioner does not dispute the foregoing proposition of law for in his determination of the deficiency for the fiscal year 1945, he has allowed petitioner a deduction of $4,000 as compensation incurred and paid to its president, A. B. Zindler. In arriving at this $4,000 the statement attached to the deficiency notice shows that the Commissioner determined that a salary of $1,000 for A. B. Zindler for each of four years 1936, 1937, 1938, and 1945, was reasonable. We *302 do not think we would be justified in overturning the Commissioner's determination for the years 1936, 1937, and 1938. In those years the evidence shows that the gross income of petitioner was comparatively small and it had no net income. In fact, in each of those years it had considerable losses. It is a fact of some significance, we think, that petitioner voted no salary at all to its president in any of those years. It was not until 1945 that petitioner voted a salary of $3,000 to A. B. Zindler for each of the years 1936, 1937, and 1938. We do not feel that the evidence warrants us in holding that the Commissioner erred in only allowing $1,000 of this as reasonable allowance for salaries to Zindler in each of the years 1936, 1937, and 1938, and disallowing the balance. Now the situation is very different, we think, as to payment for Zindler's services in 1945. By that time petitioner's gross income was three or four times as much as it was in earlier years and its net income before deduction of salaries was $36,482.51. Petitioner voted Zindler a salary of $5,000 for his services to petitioner in that year and we think that under all the circumstances it was reasonable. We do not *303 think the Commissioner was justified in determining that $1,000 would be a reasonable salary to Zindler for his services to the corporation in 1945, and we reverse that part of his determination. The Commissioner in arguing for the support of his determination lays a great deal of stress on the fact that petitioner's president, A. B. Zindler, was also president of Zindler's Inc., and in such capacity received liberal salaries from that corporation. A number of facts have been stipulated in the record about the volume of business transacted by Zindler's Inc., its gross sales, net profits, salaries paid its officers, and facts of that sort. We have not detailed these facts in our findings of fact because we do not consider them pertinent to the issue which we have here to decide. Zindler's, Inc., and petitioner were separate corporations and while they were owned by what might be termed the same interests, they were operated separately and the Commissioner has made no effort to apply the provisions of section 45, I.R.C. to the two corporations and does not claim that that section is applicable. Therefore, in arriving at our findings as to what was reasonable compensation *304 for the services actually rendered by A. B. Zindler to petitioner we have considered alone the relationship between petitioner and A. B. Zindler and not the relationship between Zindler's Inc., and A. B. Zindler. Fiscal Year Ending January 31, 1946. - What we have said as to the fiscal year ending January 31, 1945, largely applies to the fiscal year ending January 31, 1946. For the fiscal years ending January 31, 1939 and January 31, 1940, we have found that $1,000 was reasonable compensation for each of these years to A. B. Zindler. For the fiscal year ending January 31, 1941, we have found that $3,000 for that year was reasonable compensation. It was in that year that Zindler, as president, negotiated a valuable refinancing agreement with the Franklin Life Insurance Co. As to that refinancing agreement we have stated in our findings of fact as follows: "A. B. Zindler was able to refinance the building indebtedness of petitioner during 1941, as a result of which the insurance company agreed to reduce the first mortgage $10,000 from $185,000, to forgive the accrued interest, and to pay the accrued taxes, resulting in surplus being increased $84,000, more or less, as of January 31, 1941." *305 In view of this valuable service and other services which A. B. Zindler rendered to petitioner in 1941, we think the $3,000 voted to Zindler in 1946 for his services in 1941 should stand as reasonable, and we so hold. Now as to the fiscal year ending January 31, 1942, the facts show that in that fiscal year petitioner paid Zindler $1,717 for his services and took it as a deduction on its income tax return for that year. This deduction was allowed by respondent. In the fiscal year ending January 31, 1946, which is the year we are now discussing, petitioner voted $1,383 more salary to Zindler for the fiscal year ending January 31, 1942. The Commissioner disallowed all of this $1,383 on the ground that the $1,717 which was actually paid to Zindler in the fiscal year ending January 31, 1942, was reasonable compensation for his services in that year and that to allow an additional deduction of $1,383 in 1946 for the fiscal year 1942 would be unreasonable. In view of the fact that petitioner had only $20,999.90 gross income in the fiscal year ending January 31, 1942, and net income of only $2,926.90 before salaries in that year, we do not think the evidence is sufficient to justify us *306 in overturning the Commissioner's determination for that year and we so hold. As to payment for Zindler's services to petitioner for the fiscal year 1946, we have found $5,000 to be reasonable as voted in 1946 and still claimed by petitioner. By that time it had a gross income of $67,459.82 and a net income before salaries of $37,599.72. In view of these facts and other facts discussed relative to the fiscal year 1945, we have sustained petitioner as to compensation of A. B. Zindler for services actually rendered to petitioner in the fiscal year 1946. As we have already pointed out, petitioner no longer contests the determination of the Commissioner that only $100 each should be allowed as deductions for reasonable compensation to Sterling Zindler and Marvin Zindler for each of the taxable years 1945 and 1946. Therefore, those figures should be used in a computation under Rule 50. Decision will be entered under Rule 50. Footnotes
*. This amount was claimed for services rendered in fiscal year 1942, as follows: Salary due
$3,000
Salary paid
1,717
Prior year salary due
$1,283
The adjustments for the taxable year ended January 31, 1946, are further explained in the deficiency notice as follows: ADJUSTMENTS TO NET INCOME Net income as disclosed by return
$19,916.72
Unallowable deductions and additional income: (a) Officers' salaries disallowed
$13,483.00
(b) Contributions disallowed
548.25
14,031.25
Net income adjusted
$33,947.97
Petitioner by appropriate assignments of error contested the entire amount of the salary disallowances which the Commissioner made in his determination of the deficiencies. However, at the hearing petitioner's counsel stated that petitioner no longer contested the action of the Commissioner in allowing salaries of $100 each to Sterling Zindler, vice-president, and Marvin Zindler, acting vice-president, and disallowing $1,100 of the amounts claimed as deductions for each of these officers in each of the taxable years. Therefore, there is now no issue as to the amounts to be allowed as salary deductions for Sterling Zindler and Marvin Zindler in each of the taxable years. Also petitioner did not contest the $548.25 contributions disallowed in the fiscal year ended January 31, 1946. Therefore, this particular adjustment is not in issue. The only issue which we have to decide is what amount should be allowed as deductions to petitioner in each of the taxable years as reasonable compensation for services rendered to petitioner in each of the taxable years and in certain prior years. Findings of Fact Many of the facts have been embodied in a stipulation of facts signed by the parties and filed at the hearing. The facts thus stipulated are adopted as part of our findings of fact and are included herein by reference. Such parts of the stipulated facts as are deemed necessary to a decision of the issue herein are detailed in these findings of fact. Zindler Building, Inc., hereinafter referred to as the petitioner, is a corporation organized on or about February 28, 1935, under the laws of the State of Texas with its principal office and place of business located in Houston, Texas. It filed its income and excess profits tax returns for the years here in question with the collector for the first district of Texas. In 1889, Ben Zindler founded a retail clothing store in Houston, Texas, which he operated as a sole proprietorship until 1904, when his son A. B. Zindler was taken in as a partner and the business operated as Ben Zindler & Son. Ben Zindler died in 1908, and A. B. Zindler continued to operate the business as Ben Zindler's Son. In 1917, Leo and Mitchell Zindler were taken into the business and the name changed to Ben Zindler's Sons. Sometime in 1919 or 1920, A. B. Zindler acquired a small two-story building located at the corner of Fannin and Congress Streets, Houston, Texas, for a total consideration of $150,000, $75,000 of which was allocated to the land and $75,000 to the building. Sometime later the building was razed, and in 1921 a four-story and basement building was erected on the premises. A. B. Zindler erected and financed the store and office building. On or about January 31, 1945, by journal entry, the cost of the land was increased from $75,000 to $150,000 by credit to paid-in surplus. The retail clothing business occupied part of the premises from then on. Prior to incorporation, on or about February 20, 1929, the balance sheet of the partnership known as Ben Zindler's Sons disclosed the following assets and liabilities: ASSETS
Cash
$ 20,446.07
Receivables
8,540.69
Inventories
156,721.20
Furn. & Fixtures
57,333.60
Mrs. Ida Zindler
12,969.62
Prepaid Items
616.57
TOTAL
$256,627.75
LIABILITIES
Payables
$112,475.68
Special
34,500.00
Reserves: Taxes, etc.
1,500.00
Depreciation
45,977.64
Capital
62,174.43
TOTAL
$256,627.75
On March 8, 1929, the retail clothing business was incorporated under the laws of the State of Texas. The assets, subject to liabilities, were exchanged for the authorized capital of $150,000 represented by 1,500 shares of common stock of the par value of $100 per share, issued as follows: Par
Shares
%
Value
A. B. Zindler
752
50.14
$ 75,200
Leo Zindler
374
24.93
37,400
Mitchell Zindler
374
24.93
37,400
TOTALS
1,500
100.
$150,000
On March 14, 1929, permission to increase the authorized capital stock from 1,500 to 4,000 shares having been secured, A. B. Zindler transferred the land and building to the corporation in exchange for the additional 2,500 shares of stock. The land and building were set up on the books of Ben Zindler's Sons, Inc., at $500,000 and, as a result of negotiations with the Franklin Life Insurance Co. of Springfield, Illinois, a $200,000 loan was secured on the land and building evidenced by a first mortgage. The second mortgage on the said building was held by A. B. Zindler. On or about February 28, 1935, Ben Zindler's Sons, Inc. was succeeded by two corporations, with petitioner taking over the land and building and Zindler's, Inc., hereinafter referred to as the retail clothing company, taking over the retail clothing business assets. The building, as well as the furniture and fixtures, were set up on the books at their depreciated value. The petitioner's $1,000 capital stock was represented by 2,500 shares of common stock at the par value of 40 cents a share, while the $70,000 capital stock of the retail clothing company was represented by 700 shares of the par value of $100 per share held as follows: Petitioner
Zindler's, Inc.
Shares
%
Shares
%
A. B. Zindler
2,000
80.
343
49.
Leo Zindler
250
10.
175
25.
Mitchell Zindler
250
10.
175
25.
Jerome Zindler
7
1.
TOTALS
2,500
100.
700
100.
At the request of the insurance company petitioner, on or about February 28, 1935, negotiated a lease agreement with the retail clothing company. This agreement was executed by A. B. Zindler as president of both companies. The lease was amended on July 10, 1940 and December 14, 1940, but the annual rental of five per cent of the sales of the retail clothing company was not changed. A. B. Zindler was able to refinance the building indebtedness of petitioner during 1941, as a result of which the insurance company agreed to reduce the first mortgage $10,000 from $185,000, to forgive the accrued interest, and to pay the accrued taxes, resulting in surplus being increased $84,000, more or less, as of January 31, 1941. On January 28, 1942, within a year of the refinancing, a new lease agreement was entered into between the petitioner and the retail clothing company. The lease was extended for a period of 10 years from July 31, 1945, and the annual rentals increased from five per cent to seven per cent of sales of the retail clothing company. No provisions were made for the payment of officers' salaries, either by action of petitioner's board of directors or otherwise, until January 30, 1945, when the board of directors passed the following resolution: "MEMBERS PRESENT: A. B. Zindler, President Mitchell Zindler, Secretary and Treasurer Marvin Zindler, Acting Vice President "There being a quorum of Directors present, Mr. A. B. Zindler, President, called the meeting to order, and stated that the purpose of the meeting was to consider and pass upon the matter of compensation to be paid the various active officers in the Corporation, for personal services rendered the Corporation during the current fiscal year ending January 31, 1945, as well as to consider and pass upon the property [sic] of an adjustment of the compensation of the President for services rendered the Corporation in certain prior years. * * *
"Mr. A. B. Zindler stated that, although he felt that the Revenue Agent's position was not equitable to the Corporation, he was convinced that, from a strict legal standpoint, the Agent was probably correct. He further stated that he had worked out a compromise settlement of the question with the Revenue Agent, whereby the allowable salaries of the two active officers were adjusted as follows for the two years: 1942-43
1943-44
As Originally
As Originally
Claimed
Compromise
Claimed
Compromise
A. B. Zindler, President
$2,680.00
$2,680.00
$12,000.00
$5,000.00
Sterling Zindler, Assistant Secretary-Treasurer
(1942) Vice President (1943)
2,349.37
1,200.00
8,400.00
1,200.00
TOTALS
$5,029.37
$3,880.00
$20,400.00
$6,200.00
"Mr. A. B. Zindler thereupon proposed that salaries for the current year be established to conform to the amounts agreed to between the Revenue Agent and him for the year ended January 31, 1944, namely $5,000.00 for the President and $1,200.00 for the Vice President. * * * * * *
"The services performed by Mr. A. B. Zindler as President of the Corporation since its organization in 1935 were then discussed in detail. The long, hard struggle to keep the Corporation solvent during the first years of its organization was discussed, and the fact that Mr. A. B. Zindler, during all the years from 1935 to 1941 (7 years), received a total compensation of only $1,717.00 for his services to the Corporation, this amount having been paid him for the 1941-42 fiscal year. "The Directors were unanimously of the opinion that the personal services of Mr. A. B. Zindler to the Corporation were worth not less than $3,000.00 per year for each of the full fiscal years beginning with February 1, 1935 and ending January 31, 1942, or a total of seven full years at $3,000.00, or a total of $21,000.00, less the actual amount paid him in the 1941-42 year, $1,717.00, or a net of $19,283.00. "However, in view of the financial condition of the Corporation, and the necessity of retaining funds for possible contingencies which may arise out of an early termination of the War in Europe, it was the concensus of opinion that Mr. A. B. Zindler should be paid, at this time, only that portion of such additional compensation as was applicable to the fiscal years ended January 31, 1936, 1937 and 1938, or a total of three years at $3,000.00 per annum, making a grand total of $9,000.00. It was further decided that the matter of authorization of payment of additional compensation for the fiscal years ended January 31, 1939, 1940, 1941 and 1942, should be deferred until a subsequent date, with the strict understanding that the Corporation is not admitting any legal liability at this time for the additional compensation for the 1939, 1940, 1941 and 1942 fiscal years. "It was moved, seconded, and unanimously carried, therefore, "(1) That the salary of Mr. A. B. Zindler, covering services rendered by him to the Corporation for the current fiscal year ending January 31, 1945, be adjusted to $5,000.00, the same amount as agreed to by the Revenue Agent as being reasonable compensation for the prior fiscal year. "(2) That, strictly to compensate him for his valuable personal services rendered the Corporation during the fiscal years 1935-36, 1936-37, 1937-38, Mr. A. B. Zindler is to be paid the sum of $9,000.00 out of the profits of the Corporation for the fiscal year ended January 31, 1945, such amount being payable immediately." * * *
On January 23, 1946, at another meeting of the board of directors the following resolution was passed: "Members Present: A. B. Zindler, President Mitchell Zindler, Sec. & Treas. Sterling Zindler, Vice President "There being a quorium [sic] of directors present, Mr. A. B. Zindler, president, called the meeting to order, and stated that the purpose of the meeting was to consider and pass upon the matter of compensation to be paid to the various acting Officers in the Corporation, for personal services rendered the Corporation during the current fiscal year ending January 31, 1946 as well as to pass upon the properiety of an adjustment of the compensation of the President for services rendered the Corporation in certain prior years. It was moved and seconded that, as compensation for services performed during the current fiscal year ending January 31, 1946, the salaries shall be finally fixed as follows, being in accord with amounts allowed by the Revenue Agent in connection with the examination of returns of the Corporation filed for the fiscal year ended January 31, 1944. A. B. Zindler, President
$5,000.00
* * *
The minutes of the meeting of the Board of Directors which was held January 30, 1945 were reviewed and discussed in detail, and it was noted that Mr. A. B. Zindler had a Moral, if not a legal right to additional compensation for services performed in certain prior years. Referring particularly to the reasoning stated in the referenced minutes, it was unanimously voted that Mr. A. B. Zindler be paid additional compensation totalling $10,283.00, covering services performed for the Corporation for the fiscal years ending 1939, 40, and 1942, and that such amount be paid to him or credited to his account immediately, out of the earnings for the current fiscal year ending January 31, 1946." At the time provided by law, petitioner filed its corporation income tax returns, Form 1120, for the fiscal years ended January 31, 1936 to January 31, 1946, inclusive. The returns disclosed the following income and deductions for said period February 28, 1935 to January 31, 1946, inclusive: Total
Net Income
Officers'
Net Income or
Income
Deductions
Before Salaries
Salaries
Net Loss
1/31/36
$14,115.44
$24,583.80
Net Loss.
*↩ $10,468.36
* $10,468.36
1/31/37
16,537.48
27,380.86
* 10,843.38
* 10,843.38
1/31/38
19,378.59
29,508.94
* 10,130.35
* 10,130.35
1/31/39
16,574.04
30,829.38
* 14,255.34
* 14,255.34
1/31/40
18,209.53
32,577.04
* 14,367.51
* 14,367.51
1/31/41
17,647.44
28,076.16
* 10,428.72
* 10,428.72
1/31/42
20,999.90
18,073.00
2,926.90
1,717.00
1,209.90
1/31/43
35,374.62
19,485.70
15,888.92
5,029.37
10,859.55
1/31/44
54,855.45
21,318.67
33,536.78
20,400.00
13,136.78
1/31/45
59,648.81
53,166.30
36,482.51
16,300.00
20,182.51
1/31/46
67,459.82
29,860.10
37,599.72
17,683.00
19,916.72
1. INTERNAL REVENUE CODE. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * REGULATIONS 111. Sec. 29.23(a)-6. Compensation for Personal Services. - Among the ordinary and necessary expenses paid or incurred in carrying on any trade or business may be included a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows: * * *
(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.↩